**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Lovely Turcios, on behalf of herself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>Ulta Beauty, Incorporated,<br><br>　　　　　　Defendant. | Civil Action No.: **1:24-cv-00126**<br><br><br><br>**COMPLAINT – COLLECTIVE ACTION**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lovely Turcios, by and through her attorneys, on behalf of herself and others similarly situated, based on personal knowledge with respect to her own circumstances and based upon information and belief pursuant to the investigation of counsel as to all other allegations, alleges the following:

## I. INTRODUCTION

1.　　"Despite the health benefits of breastfeeding for both mothers and infants, too many nursing employees face obstacles to pumping breast milk in the workplace, making it difficult to continue breastfeeding while employed. Break time and a private space to express breast milk are critical [] supports for breastfeeding employees."[1]　The House of Representatives reached these conclusions in 2021 after more than a decade of considering the plight of working mothers around the country. Since 2010, the Fair Labor Standards Act of 1938 ("FLSA") has required employers

---

[1] H.R. Rep. 117-102, at 3 (2021), *available at* https://www.congress.gov/117/crpt/hrpt102/ CRPT-117hrpt102.pdf.

1

to provide nursing accommodations, but "[g]aps in the law limit access to [its] protections and le[ft] employees unable to recover in court when their employers fail to comply with the law's requirements."[2]  Therefore, on December 29, 2022, Congress passed and the President signed the Providing Urgent Maternal Protections for Nursing Mothers Act (the "PUMP Act") to extend the FLSA protections "to more employees and ensure employees can recover appropriate forms of relief in court when employers violate the law."[3]

2.      Despite already being required to comply with the FLSA breastfeeding requirements for more than a decade, after the PUMP Act came into effect, Ulta Beauty, Inc. ("Ulta Beauty" or "Defendant") fails to provide a "reasonable break time for an employee to express breast milk" and fails to provide a "place…that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk," all of which is mandated by the PUMP Act. Instead, employees are forced to pump breast milk in bathrooms or their private vehicles. Defendant's failure to provide sufficient lactation accommodations is a systemic issue that has impacted employees at its location and the locations of its subsidiaries throughout the country.

3.      Given this nationwide issue, Plaintiff brings this collective action lawsuit against Defendant to seek a remedy that requires Defendant to comply with the law.

4.      It has long been known that breastfeeding is crucial for a newborn baby and has numerous benefits for the mother and the child. The American Academy of Pediatrics recommends breastfeeding exclusively for at least the first six months after birth and, ideally, until or after the

---

[2] *Id.*

[3] *Id.*

child is twelve months of age.[4] Breast milk is an organic superfood that provides the essential nutrients and antibodies required for a baby's healthy growth and development. It can reduce the risk of various illnesses and infections and strengthen the infant's emotional and psychological development. Breastfeeding also has mental and physical benefits for the mother and for society at large.

5.      Not providing supportive accommodations for nursing mothers can have a negative impact on their physical, mental, and emotional health. Mothers unable to pump breast milk can experience engorgement, which can be painful and lead to infection. They also produce less milk for their babies. Not having sufficient time or space to pump can also result in increased feelings of stress, anxiety, and guilt for not being able to provide their babies with the best possible nutrition. Studies show that mothers who did not have access to a private place to pump breast milk were less likely to continue breastfeeding and achieve their breastfeeding goals, which increases their risk of mental health conditions like anxiety, postpartum depression, and stress.

6.      To ensure that employers provide reasonable break times and a private, non-bathroom space for breastfeeding employees to pump at work, Congress passed the Break Time for Nursing Mothers law (the "Pumping at Work Act") in 2010, which is a statute that amended the FLSA to require such accommodations. Unfortunately, it covered only non-exempt employees and, with such a weak enforcement mechanism, the law was "virtually useless in almost all practical application[s]."[5] The 2022 PUMP Act corrected this defect by providing additional forms

---

[4] Along with the World Health Organization, the U.S. Surgeon General's Office, and the American Academy of Family Physicians. *See* the Office of Personnel Management, *Guide for Establishing a Federal Nursing Mother's Program* (January 2013), at 2. Available at: https://www.opm.gov/policy-data-oversight/worklife/news/2013/1/opm-publishes-new-guide-for-establishing-a-federal-nursing-mother-s-program/ (last accessed October 12, 2023).

[5] *Hicks v. City of Tuscaloosa*, No. 13-cv-02063, 2015 U.S. Dist. LEXIS 141649, at *99 (N.D. Ala. Oct. 19, 2015).

3

of relief for those harmed by their employer's failure to provide adequate time and space for nursing parents to pump. *See* 29 U.S.C. §§ 216(b) and 218d.

7.     Plaintiff Lovely Turcios was an employee of Ulta Beauty in Silver Spring, Maryland at 1631 Rockville Pike, Rockville, Maryland. Ms. Turcios had her baby in July 2023 and, after taking some time off, returned to work in September 2023. Before she had her child, Ms. Turcios discussed pumping accommodations with her supervisor, Tori Mullins. When she returned to work after having her child, Ms. Turcios had to pump in her car. At times, passersby would see her pumping in her car.

8.     Defendant did not accommodate Ms. Turcios to pump breast milk at work. By failing to provide a place to pump, Defendant deprived Ms. Turcios of her rights as a nursing mother guaranteed by the PUMP Act to a clean and secure space to pump milk for her infant child.

9.     As a result of the foregoing, Ms. Turcios experienced engorgement and a reduction in her milk supply for her new baby. This reduction and the lack of accommodation provided by Defendant have caused Ms. Turcios to endure pain, anguish, anxiety, hardship, humiliation, and emotional distress.

10.     It would have been relatively easy for Ulta Beauty to comply with the PUMP Act. For example, there are pre-fabricated temporary spaces that are commercially available for installation. These temporary spaces are easy to set up, affordable, and would satisfy Defendant's obligations under the PUMP Act. Examples of the spaces are those sold by Mamava,[6] Brighter

---

[6] https://www.mamava.com/all-products (last accessed October 12, 2023).

Booth[7], and DayOne Baby[8], among many others. Images from those companies' web sites show how such spaces could have been integrated into Defendant's space:



11.     Likewise, other companies are working to accommodate breastfeeding mothers with different easy-to-implement options, such as using a temporary curtained-off space[9] or permitting employees to use managers' locked offices to express milk.[10]  Thus, while there are many ways to accommodate breastfeeding employees, Defendant has simply decided to not provide such accommodations.

12.     Defendant's failure to comply with the PUMP Act has significantly impacted Ms. Turcios and other breastfeeding employees of Defendant. Instead of supporting breastfeeding mothers, Defendant's practices forced those mothers into a Hobson's choice between using demeaning, non-private spaces to express milk, abandoning pumping at work altogether, or quitting their jobs. Congress clearly declared in the PUMP Act that no mother should have to make such a choice.

---

[7] https://brighterbooth.com (last accessed October 12, 2023).

[8] https://www.dayonebaby.com (last accessed October 12, 2023).

[9]  *See*  https://wvutoday.wvu.edu/stories/2023/09/07/new-dedicated-lactation-room-opens-to-the-public-at-milan-puskar-stadium (last accessed November 8, 2023).

[10]  *See*  https://www.qsrmagazine.com/outside-insights/ask-restaurant-legal-professionals-how-accommodate-pregnant-and-breastfeeding (last accessed November 8, 2023).

13.     Plaintiff seeks redress for Defendant's violations of the PUMP Act by, *inter alia*, requiring Defendant to provide sufficient break time and a functional place, shielded from view and free from intrusion, which an employee may use to express breast milk.

14.     Plaintiff brings this action on behalf of herself and a nationwide collective of similarly situated former and current employees of Ulta Beauty. Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, reasonable attorneys' fees, litigation costs, and pre-and post-judgment interest.

## II. <u>PARTIES</u>

15.     Plaintiff Lovely Turcios was an employee of Defendant who worked as a MAC makeup artist at the Ulta Beauty store located at 1631 Rockville Pike, Rockville, Maryland. Ms. Turcios is an individual resident of Silver Spring, Maryland and a citizen of Maryland. During all relevant times, Ms. Turcios was the mother of an infant whom she breastfed and continued to breastfeed while she was working for Defendant. Pursuant to § 216(b), she has consented in writing to be a party to this action. Her executed Consent to Join form is filed herewith.

16.     The members of the FLSA Collective, including Ms. Turcios, are or have been employed by Defendant since December 2022 and have requested lactation accommodations. Upon information and belief, Defendant's practices and policies, or lack thereof, have impacted members of the FLSA Collective in the same or a similar manner across Defendant's locations.

17.     Ulta Beauty is a Delaware corporation, headquartered in Bolingbrook, Illinois. Ulta Beauty is the largest specialty beauty retailer in the U.S. offering cosmetics, fragrance, skin care, and hair products along with salon services.[11] As of January 28, 2023, Ulta Beauty operates 1,355

---

[11] Ulta Beauty Form 10-K, Fiscal year ending January 28, 2023, at 2. Available at: https://www.ulta.com/investor/sec-filings/annual-reports/content/0001558370-23-004581/0001558370-23-004581.pdf

retail stores across 50 states.[12] As of January 28, 2023, over 90% of Defendant's Beauty Associates were female and over 50% were people of color.[13]

18.     Defendant is an "employer" within the meaning of the FLSA pursuant to 29 U.S.C. §§ 203(a), (d) and was an "employer" of Ms. Turcios at all times relevant hereto.

### III. <u>JURISDICTION AND VENUE</u>

19.     This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States.

20.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in and has a corporate office in this District, can be found in this District, transacts business in this District, employs people in this District, and has significant contacts with this District.

21.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District, and Defendant is subject to personal jurisdiction here.

---

[12] *Id.*

[13] Ulta Beauty 2022 Environmental, Social & Governance Report, at 9. Available at: https://d1io3yog0oux5.cloudfront.net/_0c2ce48885ef6bc98055835484b8033d/ulta/files/pages/ulta/db/1975/description/ULTA-003_2022_ESG_Report_ADA_110623.pdf (last accessed December 2, 2023)

## IV. BACKGROUND

### A. The Benefits of Breastfeeding

22.     There are significant and proven benefits to breastfeeding children. Breast milk is widely accepted as the optimal source of nutrition for infants, and it provides numerous protections against illnesses and diseases for infants and mothers alike.[14]

23.     Breastfed babies generally have better immune system development and functioning because breastmilk contains antibodies that protect developing immune systems from disease.[15] As a result, babies who are breastfed tend to have fewer and less severe instances of certain short-term illnesses, including bacterial meningitis, diarrhea, ear infections, respiratory infections, urinary tract infections, and certain chronic illnesses, including diabetes, lymphoma, leukemia, hypercholesterolemia, and asthma.[16]

24.     A paper published in 2015, analyzing dozens of studies, found that breastfeeding is associated with a lower risk of childhood obesity. The paper states that breastfeeding was associated with a significantly reduced risk of obesity in children.[17]

---

[14] Am. Acad. of Pediatrics. *Technical Report: Breastfeeding and the Use of Human Milk*. Pediatrics. 2022;150 (1): e2022057988. Available at: https://publications.aap.org/pediatrics/article/150/1/e2022057989/188348/Technical-Report-Breastfeeding-and-the-Use-of?searchresult=1 (last accessed November 8, 2023).

[15] *See* Spitzmueller, C.*,* Wange, Z., Zhang, J., Thomas, C.L., Fisher, G.G., Matthews, R.A., and Strathearn, L. (2016). *Got milk? Workplace factors related to breastfeeding among working mothers*, Journal of Organizational Behavior, J. Organiz. Behav. 37, 692–718; Grummer-Strawn, L.M. and Rollins, N. (2015), Summarising the health effects of breastfeeding. Acta Paediatr, 104: 1-2. https://doi.org/10.1111/apa.13136 (last accessed November 8, 2023).

[16] *See Guide for Establishing a Federal Nursing Mother's Program, supra,* n. 4, at 6–7.

[17] Horta, B.L., Loret de Mola, C. and Victora, C.G., *Long-term consequences of breastfeeding on cholesterol, obesity, systolic blood pressure and type 2 diabetes: a systematic review and meta-analysis*. Acta Paediatr, (2015) 104: 30-37; *see also* Yan J., Liu L., Zhu Y., Huang G., Wang P.P., *The association between breastfeeding and childhood obesity: a meta-analysis.* BMC Public Health. 2014, available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4301835/ (last accessed November 8, 2023).

25.     Several studies have found that breastfeeding is associated with a lower risk of sudden infant death syndrome ("SIDS"). These studies show that babies who were breastfed for the first few months of life had a lower risk of SIDS than babies who were not.[18]

26.     The World Health Organization recommends that infants be exclusively breastfed for the first six months of life, meaning they should receive no other food or drink, not even water.[19]

27.     Although breastfeeding initiation and duration have consistently improved, one study revealed that 60% of women do not meet their breastfeeding goals.[20]

28.     Society also benefits from breastfeeding. One study showed that if 90% of women in the United States breastfed exclusively for six months, it would save the country $13 billion and prevent 911 preventable infant deaths per year.[21]

29.     As discussed, the benefits of breastfeeding are significant, but there are also drawbacks to not breastfeeding. Parents who do not breastfeed suffer heightened health risks

---

[18] Meek, J. Y., Noble, L. *Technical Report: Breastfeeding and the Use of Human Milk.* Pediatrics July 2022; 150 (1): e2022057989, at 7. Available at: https://publications.aap.org/pediatrics/article/150/1/e2022057989/188348/Technical-Report-Breastfeeding-and-the-Use-of?searchresult=1?autologincheck=redirected (last accessed November 8, 2023).

[19] *World Health Organization's (WHO) Global Strategy for Infant and Young Child Feeding*, at 7–8. Available at: https://www.who.int/publications/i/item/9241562218 (last accessed November 8, 2023).

[20] Odom E. C., Li R., Scanlon K. S., Perrine C. G., Grummer-Strawn L., *Reasons for earlier than desired cessation of breastfeeding*. Pediatrics (2013); 131: e726–e732, e729.

[21] Morris, L., Lee, J., Williams, J., *Exposed: Discrimination Against Breastfeeding Workers*. WorkLife Law, at 7. Available at: https://worklifelaw.org/publication/exposed-discrimination-against-breastfeeding-workers/ (last accessed on May 11, 2023) (citing Bartick, M. L., & Reinhold, J. *The economic burden of suboptimal breastfeeding in the United States: a systematic review*. Pediatrics (2010); 126(3), e756–e768).

"including breast and ovarian cancers, heart disease, postpartum depression, diabetes, and rheumatoid arthritis."[22]

### B.    *Proper Workplace Accommodations for Pumping Are Critical*

30.    Not having a secure space for nursing mothers can increase anxiety and feelings of being overwhelmed, which can have a negative impact on the mother's mental, physical, and emotional health. Nursing mothers who do not have adequate workplace support are at an increased risk of early weaning, illness, and job loss. Therefore, it is critical for workplaces to provide support for nursing mothers.

31.    In 2011, the U.S. Surgeon General released a Call to Action to Support Breastfeeding and noted that for employed mothers, "returning to work is a significant barrier to breastfeeding" because nursing mothers often face inflexibility and, among other things, lack a private place to express milk.[23] The Call to Action found that when mothers "do not have a place to breastfeed or express breast milk, they may resort to using the restroom for these purposes, an approach that is unhygienic and associated with premature weaning."[24]

32.    A study based on data from 2011 to 2013, after the Pumping at Work Act was enacted in 2010, found that workplace accommodations are a significant predictor of breastfeeding duration.[25] The study found that nearly 50% of women reported that their postpartum employment

---

[22] *Id.*, at 7, citing Am. Acad. of Pediatrics, Policy Statement, *Breastfeeding and the Use of Human Milk*, 129 PEDIATRICS e827, 32 (2012).

[23] *The Surgeon General's Call to Action to Support Breastfeeding, Barriers to Breastfeeding in the United States*, Office of the Surgeon General (US); 2011. Available at https://www.ncbi.nlm.nih.gov/books/NBK52682/ (last accessed November 8, 2023).

[24] *Id.*

[25] Kozhimannil, K. B., Jou, J., Gjerdingen, D. K., and McGovern, P. M., *Access to workplace accommodations to support breastfeeding after passage of the Affordable Care Act*, Women's Health Issues. 2016; 26(1): 6–13.

plans affected breastfeeding-related decisions.[26] About a third of women indicated that employment posed a challenge to breastfeeding, and only 45% of women had access to a private space to pump milk.[27]

33.    A clean and secure lactation space is necessary for a mother to pump milk comfortably and efficiently.[28] Without a clean, secure space, nursing mothers can experience anxiety and stress, which can negatively impact the mother's milk supply.

34.    The more a mother gets to pump her breast milk, the longer her milk supply/production lasts and the more breast milk the baby gets. Continuous pumping increases the chances of a longer supply of breastmilk.[29] Conversely, being unable to express milk when needed can result in a decrease in the individual's milk supply, forcing an earlier-than-recommended weaning of the child.[30]

35.    When a mother's milk empties, there are neurological signals that release a hormone called prolactin, which triggers milk production. Limiting the amount a mother can pump decreases the amount of emptying and therefore decreases milk production.

36.    Limiting the amount a person can pump can also lead to mastitis, an inflammation of the breast tissue that may involve infection, abscess, pain, fever, and illness.[31] Mastitis can

---

[26] *Id.*, at 8.

[27] *Id.*

[28] *See* Whitley M.D., Ro A., Choi B. *Workplace breastfeeding support and job satisfaction among working mothers in the United States*. Am J Ind Med. 2019; 62(8):716–726, 717. Available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8423352/ (last accessed October 12, 2023).

[29] *See* Bai Y., Wunderlich S.M. *Lactation accommodation in the workplace and duration of exclusive breastfeeding*. J Midwifery Womens Health. 2013; 58(6): 690–96, 697 and 695.

[30] *See The Surgeon General's Call to Action to Support Breastfeeding, supra* n. 23.

[31] *Exposed: Discrimination Against Breastfeeding Workers*, s*upra* n. 21 at 7, citing Lisa Amir. & The Academy of Breastfeeding Medicine Protocol Committee, ABM Clinical Protocol #4: Mastitis, Breastfeeding Medicine, 9 (5), 239 (Revised March 2014).

increase the risk of premature weaning.[32] Even if women do not develop mastitis or other complications from engorgement, pumping while already engorged can cause nipple trauma and bruising. Additionally, inadequate pumping can reduce a mother's milk supply, and it can take much longer to bring the supply back up.[33]

37.     Moreover, a recent systematic review of studies on maternal mental health and breastfeeding showed that mothers who were not able to achieve their breastfeeding goals had negative mental health outcomes and put them at greater risk for depression, anxiety, and other mental health conditions.[34] Having proper workplace accommodations, like a clean and secure place to pump milk, can help nursing mothers achieve their breastfeeding goals and minimize the risk of maternal mental health problems, such as depression and anxiety. Nursing mothers who had access to supportive workplace accommodations can feel more confident and supported in the breastfeeding experience, which can play an important role in maternal mental health.[35]

### C.     Employers Must Do More to Protect Breastfeeding Employees

38.     Failing to provide adequate lactation accommodations remains a prevalent issue and can often force nursing mothers to stop breastfeeding or leave the workplace altogether.

39.     A report published in 2016 by the Center for WorkLife Law at the UC Hastings College of the Law found that cases where an employer denied accommodations to or

---

[32] *See The Surgeon General's Call to Action to Support Breastfeeding, supra* n. 23.

[33] *Id.*

[34] Yuen M., Hall O.J., Masters G.A., Nephew B.C., Carr C., Leung K., Griffen A., McIntyre L., Byatt N., Moore Simas T.A. *The Effects of Breastfeeding on Maternal Mental Health: A Systematic Review.* J Womens Health (Larchmt). 31(6): 787–807, available at: https://pubmed.ncbi.nlm.nih.gov/35442804/ (last accessed November 8, 2023).

[35] *See The Surgeon General's Call to Action to Support Breastfeeding, supra* n. 23.

discriminated against an employee because she was breastfeeding or needed to express milk during the workday increased 800% between 2005 and 2016.[36]

40.     According to a report released in 2019, which tracked 70 cases involving allegations of breastfeeding discrimination and retaliation that have written opinions issued between 2008 and April 2018, 63% of employees ended up losing their job (43% were fired and 20% resigned).[37]

41.     The women facing job loss for lack of lactation accommodation spanned from a taqueria cashier in California to a doctor in Georgia and a lawyer in New York.[38]

42.     For example, in 2019, Simone Teagle filed a lawsuit against the City of New York for the discrimination she experienced as a breastfeeding mother.[39] Teagle said that for nearly six months, she was forced to pump in a breakroom, a bathroom, the locker room, or her vehicle.[40] As a result, she "lost a lot of her milk supply."[41] The suit is still pending.

---

[36] Calvert, C. T., *Caregivers in the Workplace: FRD Update 2016*. Center for WorkLife Law at the UC Hastings College of the Law, at 17. Available at: https://worklifelaw.org/publications/Caregivers-in-the-Workplace-FRD-update-2016.pdf (last accessed November 8, 2023).

[37] *Exposed: Discrimination Against Breastfeeding Workers, supra* n. 21, at 13.

[38] *Id.* citing *Dep't of Fair Employment & Hous. v. Acosta Tacos*, No. E200708 T-0097-00se, 2009 CAFEHC LEXIS 2, at *8–10 (Cal. Fair Employment & Hous. Comm'n June 16, 2009); *Wexler v. Kennesaw Pediatrics, P.C.*, No. 16-cv-1491, 2017 U.S. Dist. LEXIS 111037, at *2–3 (N.D. Ga. July 17, 2017); *Kim v. Goldberg*, 862 F. Supp. 2d 311, 315 (S.D.N.Y. 2012).

[39] *See Teagle et al. v. The City of New York et* al., No. 19-cv-7211 (E.D.N.Y); *see also* H.R. 3110, 117th Cong. (1st Sess. 2021), at 16.

[40] *See NYPD Cop Sues City for $5 Million Amid Claims She Was Harassed for Pumping Breast Milk*, (October 18, 2018). Available at: https://news.yahoo.com/nypd-cop-sues-city-5-155315818.html (last accessed November 8, 2023).

[41] *Exposed: Discrimination Against Breastfeeding Workers, supra* n. 21, at 12.

### D. The Law Before the PUMP Act

43. Despite this wide consensus in favor of pumping, and Congress having passed the Pumping at Work Act in 2010, for the past 12 years, a common problem faced by all nursing mothers who were not provided with sufficient lactation accommodation was the weak enforcement mechanism under the Pumping at Work Act. With limited remedies available, many of the claims in these cases based on violations of the Pumping at Work Act were dismissed.

44. Under § 207(r) of the Pumping at Work Act, the only remedies available were for unpaid minimum wages or overtime compensation. However, because employers are not required to pay employees who take breaks to pump, holding accountable employers who failed to provide accommodations was virtually impossible.[42] As one court noted, regarding the Pumping at Work Act, "there does not appear to be a manner of enforcing the express breast milk provisions."[43]

45. Without a proper enforcement mechanism, employers like Ulta Beauty were permitted to, and did, freely violate the Pumping at Work Act with little fear of consequence.

46. Ensuring that working mothers have the time and space to express breastmilk is not a partisan issue. Around the time that the PUMP Act was passed, politicians from across the political spectrum expressed support for strengthening protections for lactating mothers in the workplace.

---

[42] In one of a handful of cases in which the court permitted a § 207(r) claim to proceed, a postpartum bank teller was told she had to express milk in the bathroom. When she objected on the basis that the bathroom was unsanitary, she was eventually forced to leave work in the middle of the day to go home and pump. She sued her employer, and the court only permitted the suit to proceed because it found the plaintiff had alleged 40.35 hours of lost wages. The case was settled in 2017. *Lico v. TD Bank,* No. 14-cv-4729, 2015 U.S. Dist. LEXIS 70978 (E.D.N.Y., 2015).

[43] *Salz v. Casey's Marketing Co.*, No. 11-cv-3055, 2012 U.S. Dist. LEXIS 100399, at *7 (N.D. Iowa July 19, 2012).

47.     In a statement issued on March 8, 2021, in recognition of International Women's Day, President Biden said: "We must ensure that women can access affordable, high-quality health care throughout their lives, including maternal health care and the ability to breastfeed."[44]

48.     Thereafter, in October 2021, Congresswomen Jaime Herrera Beutler, a Republican Congresswoman from Washington, expressed her support for the PUMP Act stating:

> Making sure moms can pump at work promotes healthier families, and it's also important to help businesses recruit and retain the workforces they need. That's why I'm pleased the House approved this business-friendly, bipartisan legislation … that simply provides moms with reasonable opportunities to pump in their workplace. I'm proud to have worked with businesses, health care stakeholders, and parents in successfully leading this legislation [].[45]

49.     On September 27, 2021, the White House issued a statement strongly supporting the PUMP Act, stating that: No new mother should face unfair treatment in the workplace because their employer refuses to provide them with [a] . . . private, clean space needed to adequately express breast milk while at work, forcing them to choose between their health and the health of her child, and earning a paycheck. Yet millions of new working mothers, disproportionately working mothers of color, face this challenge every day.[46]

50.     Prior to the vote on the PUMP Act, Republican Senator Lisa Murkowski stated: "With this bill, parents will be empowered to make their own choices on breastfeeding, and businesses can improve retention of valuable employees. It's a win-win-win . . . What has been a question is a women's protection at the jobsite to pump safely. If a mother chooses to breastfeed

---

[44] https://www.whitehouse.gov/briefing-room/statements-releases/2021/03/08/statement-by-president-biden-on-international-womens-day/ (last accessed November 8, 2023).

[45] https://adams.house.gov/media-center/press-releases/adams-maloney-congressional-maternity-care-caucus-black-maternal-0 (last accessed November 8, 2023).

[46] https://www.whitehouse.gov/wp-content/uploads/2021/09/H.R.-3110-SAP.pdf (last accessed November 8, 2023).

her baby, she deserves the legal protection to do so without having to worry about it impacting her career."[47]

51.     Numerous organizations outside of government also expressed strong support for the PUMP Act. For example, in a news release published on October 22, 2021, on the U.S. Breastfeeding Committee's website, Vania Leveille, Senior Legislative Counsel for the ACLU, said: "Employers in every industry should have policies in place to accommodate the needs of pregnant and breastfeeding employees but, unfortunately, that is not currently the case. Instead, too many workers are penalized, discriminated against, terminated, or left without options when they try to pump breast milk at work."[48]

52.     On the other hand, organizations that represent businesses also saw the value in passing the PUMP Act. The National Retail Federation's Senior Vice President for Government Relations told the Members of the House in a letter dated October 12, 2021, that "[t]he PUMP Act is a sound piece of bipartisan legislation that will allow nursing mothers to maintain their vital role the American workplace."[49]

53.     Similarly, in a letter sent to all the Members of Congress, the U.S. Chamber of Commerce, stated: "The PUMP Act is a win-win for nursing mothers and the businesses that employ them. Employers would get clarity and a way to avoid litigation, and nursing mothers

---

[47] https://www.newsweek.com/full-list-senators-who-voted-against-breastfeeding-workers-protections-1769450 (last accessed October 12, 2023).

[48] https://www.usbreastfeeding.org/usbc-news--blogs/pump-for-nursing-mothers-act-passes-with-bipartisan-support-in-us-house-of-representatives (last accessed October 12, 2023).

[49] Letter from David French to the Honorable Nancy Pelosi (Oct. 12, 2021) *available at* http://d22f3d5c92fe72fd8ca1-d54e62f2f7fc3e2ff1881e7f0cef284e.r22.cf1.rackcdn.com/2021%20Hill%20Letters/NRF%20Support%20Letter%20-%20PUMP%20Act%20-%20October%2012%202021.pdf (last accessed October 12, 2023).

would be able to remain in the workforce. The Chamber is pleased to strongly support this legislation."[50]

54.     Indeed, private industry also recognizes and supports the increasing need to protect and accommodate nursing mothers.  There is a growing industry for the sale of "portable lactation pods," which are specially designed private spaces available to be used in various public and private venues to support breastfeeding mothers.[51] These pods are intended to address the need for access to adequate space for breastfeeding, away from public spaces or unhygienic restrooms. The growing presence of these lactation pods in the United States highlights a societal effort to recognize the importance of the well-being of both new mothers and infants.

### E.     The PUMP Act

55.     Given the acknowledged problems with the Pumping at Work Act, in late 2022, Congress passed the PUMP Act with strong bi-partisan majorities in both houses. In the House of Representatives, it passed with a 276-member majority,[52] and in the Senate, it passed with a near-unanimous vote of 92 to 5.[53]

56.     On December 29, 2022, the President signed an omnibus spending bill (P.L. 117-58), which included the PUMP Act.

---

[50] *U.S. Chamber Letter on the PUMP Act* (Dec. 20, 2022) *available at* https://www.uschamber.com/employment-law/u-s-chamber-letter-on-the-pump-act (last accessed October 12, 2023).

[51] For example, Mamava Inc., BrighterBooth, Nessel, and Panel Built Incorporated all market and sell portable, free-standing, and/or prefabricated lactation spaces.

[52] https://clerk.house.gov/Votes/2021331?BillNum=3110 (last accessed October 12, 2023).

[53]  https://www.senate.gov/legislative/LIS/roll_call_votes/vote1172/vote_117_2_00417.htm  (last accessed May 11, 2023).

57.     According to both the House bill (H.R. 3110)[54] and the relevant Senate Amendment (S. Amdt. 6595),[55] the purpose of the PUMP Act was "[t]o amend the [FLSA] to expand access to breastfeeding accommodations in the workplace, and for other purposes."

58.     Specifically, the PUMP Act amended the FLSA to include § 218d, which provides that:

> (a) An employer shall provide —
>
> ''(1) a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk; and
>
> ''(2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

29 U.S.C. § 218d.

59.     Notably, the statute states that the "employer ***shall*** . . . provide a place…" for nursing parents to express milk. (Emphasis added.) The word "shall" in § 218d imposes an affirmative duty on the employer to provide a clean, secure space because, as Congress found, "[a] private space to express breast milk is critical for nursing employees."[56]

60.     Importantly, the PUMP Act also strengthened the relief available by inserting specific language in § 216(b) (one of the enforcement sections of the FLSA) stating that:

> Any employer who violates the provisions of section 15(a)(3) ***or 18D of this Act*** [29 USCS § 215(a)(3) or 218d] ***shall be liable for such legal or equitable relief as may be appropriate*** to effectuate the purposes of section 15(a)(3) or 18D [29 USCS § 215(a)(3) ***or 218d***], including without limitation employment, reinstatement, promotion, and the

---

[54] https://www.congress.gov/bill/117th-congress/house-bill/3110/text (last accessed October 12, 2023).

[55] https://www.congress.gov/amendment/117th-congress/senate-amendment/6595 (last accessed October 12, 2023).

[56] H.R. 3110, 117th Cong. (1st Sess. 2021), at 10.

payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b) (emphasis added, which reflects the amendments to § 216(b)).

61.     Congress intended this addition to correct for the lack of enforcement provided for in the Pumping at Work Act. According to the legislative intent behind the PUMP Act, one of the purposes was to provide additional forms of relief:

> …recovery only for unpaid minimum wages or overtime compensation renders employees unable to enforce current break time and space requirements in a private right of action…even if unpaid minimum wage or overtime compensation were recoverable, lost wages are often an inadequate or inappropriate form of relief… H.R. 3110 would allow workers to seek legal ***and equitable relief***… Allowing for legal and equitable relief under H.R. 3110 will also ***allow nursing employees to recover for harm to their physical and mental health***…***including for medical costs or emotional distress, and punitive damages for this type of harm***.[57]

**F.     Guidance from the Department of Labor**

62.     On May 17, 2023, The U.S. Department of Labor Wage and Hour Division ("WHD") published Field Assistance Bulletin No. 2023-02 (the "FAB"), which provides guidance to agency officials responsible for enforcing the PUMP Act.[58] The FAB provides insight into how the WHD will enforce employees' rights under the PUMP Act.

63.     Regarding an employee's right to breaks to pump breast milk, the FAB emphasizes that employees are entitled to a "reasonable break ***each time*** such employee has need to pump breast milk at work for one year after the child's birth. An employer may not deny a covered employee a needed break to pump."[59]

---

[57] H.R. 3110, 117th Cong. (1st Sess. 2021), at 16 (emphasis added).

[58] U.S. Department of Labor, Wage and Hour Division, Field Assistance Bulletin No. 2023-02. Available at: https://www.dol.gov/sites/dolgov/files/WHD/fab/2023-2.pdf (last accessed November 12, 2023).

[59] *Id.* at 2 (emphasis in original).

64.     Regarding the space requirements, employers must provide a "functional space" that is "(1) shielded from view; (2) free from intrusion from coworkers and the public; (3) available each time it is needed by the employee; ***and*** (4) not a bathroom."[60]

65.     The FAB states: The location ***must be functional as a space for pumping***.[61] It must have a place for the nursing employee to sit, a flat surface (other than the floor), and employees must be able to store milk while at work.[62]

66.     Further, an employer who violates a nursing mother's right to reasonable break times and a functional space to pump breast milk is liable "for appropriate legal or equitable remedies . . . . [which] may include ***compensatory damages and make-whole relief***, such as economic losses that resulted from violations, ***and punitive damages*** where appropriate. These remedies are available regardless of whether the employee has also experienced retaliation."[63]

67.     An employee may file a private cause of action seeking appropriate remedies, and there is "***no waiting time***" for an employee bringing a private suit "to enforce the reasonable break time requirement."[64]

68.     Finally, employers are required to "post and keep posted a notice explaining the FLSA [and PUMP Act provisions] in conspicuous places in every establishment where such employees are employed."[65]

---

[60] *Id.* at 4 (emphasis in original).

[61] *Id.* (emphasis added).

[62] *Id.*

[63] *Id.* at 7 (emphasis added).

[64] *Id.* at 8 (emphasis in original).

[65] *Id.*

69.     On September 18, 2023, the Department of Labor's Wage and Hour Division found "supervisors employed by Aimbridge Employee Service Corp. – operating as Hammock Beach Golf Resort and Spa – failed to provide a private place for a worker to express milk for her newborn baby, in violation of" the PUMP Act.[66] The agency found that it took supervisors nearly four months to provide an employee with a suitable space to pump milk, and even then the space — a manager's office — lacked privacy as the employee learned "when another worker entered the room while the mother was attempting to pump milk."

70.     Division Director, Wildalí De Jesús, stated: "Employers who fail to provide break time and a private place as the law requires are creating a barrier for women to balance their career and a child's needs once they return to work after having a child."[67] "There are long term benefits to breast feeding both for families and employers. Mothers who breast feed generally take less time off work due to childhood illnesses," added De Jesús.

71.     Plaintiff seeks this Court's assistance on behalf of all nursing mothers who work and their infant children to improve breastfeeding outcomes by clarifying that employers cannot deny their employees adequate lactation accommodation in the workplace.

## V. DEFENDANT DENIES PLAINTIFF HER RIGHTS TO ACCOMMODATION

72.     Plaintiff Lovely Turcios began working for Ulta Beauty as a makeup artist in 2018 at the Ulta Beauty store located at 1631 Rockville Pike, Rockville, Maryland.

73.     Ms. Turcios gave birth in July 2023 and, after taking some time off from work, returned to work in September 2023. Before having her child, Ms. Turcios discussed her need for

---

[66] *U.S. Department of Labor Finds Palm Coast Resort Operator Denied Employee Private Space to Express Milk for Newborn, As Federal Law Requires*. Available at: https://www.dol.gov/newsroom/releases/whd/whd20230918 (last accessed October 12, 2023).

[67] *Id.*

lactation accommodation with her supervisor and general manager, Tori Mullins. Ms. Mullins had also recently had a child and was breastfeeding in or around this time. Defendant did not accommodate Ms. Turcios's needs to pump breast milk at work.

74.     On her first shift, Ms. Turcios inquired about where she should pump. She was advised by Johann Rivera that Tori Mullins uses the managers' office to pump, but that it is not secure, people will be coming in and out during use, and that use of that office by Ms. Turcios would be disfavored. It was suggested that Ms. Turcios instead pump in her car.

75.     With no other option made available to her, Ms. Turcios began pumping in her car in an open parking lot. While Ms. Turcios sometimes hung a blanket in the window to shield herself from view, passersby could and did occasionally see Ms. Turcios pumping.

76.     It was not until months later that Ms. Turcios' new manager advised Ms. Turcios that she could use an office to pump - as long as no one else is using it. The office space offered to Ms. Turcios is rarely available to Ms. Turcios, and on the two occasions that she was able to avail herself of that space, other employees and managers were frequently coming in and out of the space while she was pumping.

77.     Ms. Turcios tries to pump at least twice per shift but was not always permitted to do so. On several occasions, Defendant would schedule Ms. Turcios back-to-back clients on the weekends, which would make it difficult to find time to pump. She would become engorged and would sometimes grab herself due to the pain. At times, clients would notice, which made her uncomfortable.

78.     Like other makeup artists, Ms. Turcios was given two 15-minute paid breaks, but they were insufficient to start and finish pumping. Ms. Turcios would often take an additional 10 minutes to finish pumping, with the hope that no one would reprimand her for doing so.

79. Defendant's lack of accommodation impacted Ms. Turcios physically and mentally. She experienced engorgement, which was painful, and a significant reduction in her milk supply. Before returning to work, Ms. Turcios was pumping at least five ounces per breast. However, after several weeks of work, Ms. Turcios's milk supply dropped to three ounces on one breast and four on the other.

80. Defendant, acting through supervisors and managers, and on information and belief pursuant to organization-wide policies (or lack thereof), did not provide Ms. Turcios with a functional, sanitary, and private space to pump. Defendant failed or refused to provide accommodation within ten days of having notice from Ms. Turcios as to the lack of accommodation. Defendant's acts violate the PUMP Act.

81. In accordance with 29 C.F.R. § 516.4, Defendant should have alerted nursing employees like Ms. Turcios of her rights to sufficient lactation accommodation by posting information in conspicuous locations at Defendant's locations across the country. Upon information and belief, Defendant did not make such information available to ensure that employees were aware of their rights to take reasonable breaks and to have a secure place to pump.

82. As Plaintiff's experience shows, in practice, Ulta Beauty does not provide accommodations for nursing employees. Ulta Beauty failed to properly train supervisors and management to accommodate requests from nursing employees for accommodation. Ulta Beauty does not have an adequate or specific practice or a policy regarding secure, private, functional spaces for nursing employees that is enforced on its vessels or in its offices across the country. Defendant's failure to provide accommodations for nursing mothers is a violation of the law. The FLSA requires employers to provide reasonable accommodations for nursing mothers within ten days of having notice. Defendant's refusal to do so denies nursing employees their legal rights,

makes it difficult for them to continue working while breastfeeding, and has impacted them mentally and physically.

83.     Defendant's failure to provide Ms. Turcios and other similarly situated employees with reasonable breaks and a secure space, shielded from view, to express milk, caused her anxiety and uncertainty about her ability to continue breastfeeding. Returning to work after having a baby and continuing to pump during working hours requires mothers to have stamina and persistence. It requires upkeep of fluids and nutrition to ensure a continuous flow of milk production. Sufficient time and a functional space are necessary because to begin the flow of milk, mothers must be in a relaxed and rested state, not stressed and anxious while pumping in the bathroom or an open deck of a boat, in plain view. The stress and anxiety of breastfeeding while being seen by the public or colleagues can jeopardize the flow of milk and may result in mothers not being able to express as quickly as someone who is relaxed and certain that they will not be intruded upon.[68]

84.     Ms. Turcios was damaged in that she experienced pain, anguish, discomfort, humiliation, embarrassment, emotional distress, and anxiety.

## VI. COLLECTIVE ACTION ALLEGATIONS

85.     The "FLSA Collective" consists of all current and former employees of Defendant across the country who, since December 29, 2022, (1) were or are lactating, and (2) were or are not provided with a sanitary "functional space" that is (a) free from intrusion, (b) shielded from view, (c) available each time it is needed, and (d) not a bathroom; OR were denied a break to pump breast milk while at work in the year following the birth of the child.

---

[68] *See* H.R. 3110, 117th Cong. (1st Sess. 2021), at 10 ("Breastfeeding mothers must feel safe in order to let down breast milk, and a reasonable guarantee of privacy is a key part of that safety. If a nursing mother feels unsafe or emotionally distressed, her production of oxytocin may be inhibited, which can create a physiological barrier to lactation." (citation omitted)).

86.     Defendant has over 43,000 female employees[69] and there are numerous similarly situated employees who are working or worked for Defendant and are or were unlawfully denied their rights under the PUMP Act.

87.     The number of affected employees can be ascertained by Defendant based on its personnel records. Collective members may be informed of the pendency of this collective action by email and/or publication at Defendant's various locations throughout the country.

88.     This action is properly maintained as a collective action under 29 U.S.C. § 216(b) because all class members are similarly situated. The affected individuals were and continue to be current and former employees of Defendant who: (1) required accommodations for lactation at work since December 29, 2022; and (a) were not provided with reasonable breaks to pump "as needed" or (b) notified their supervisor or manager that they did not have access to a private and secure non-bathroom space and were not provided with one.

89.     As mentioned above, companies such as Ulta Beauty can accommodate nursing employees by purchasing portable spaces, additional examples of which are shown below. These portable lactation pods are available at a variety of different prices and sizes and can be stored off-site. They are marketed to provide a secure, sanitary space with a flat surface to comfortably accommodate all nursing mothers. This is a widely available and simple solution for Defendant to accommodate its lactating employees.

---

[69] *See* Ulta Beauty ESG Report, *supra* n. 13, at 45.



90.     Defendant could also have accommodated its nursing employees by providing them with access to a locked office or by installing a curtain or other screening protection and advising employees not to open the curtain. However, Defendant chose not to do so.

91.     Furthermore, Ulta Beauty failed to provide its nursing employees with reasonable breaks each time they needed to pump.  Defendant's refusal to accommodate employees to allow them sufficient break time to pump is a clear violation of the PUMP Act and the rights of nursing mothers.

92.     Defendant failed to train or adequately inform its employees about the rights of nursing employees to take reasonable breaks to pump and their rights to a secure, private, non-bathroom space. Defendant failed to institute procedures or guidelines to ensure that nursing employees would be properly accommodated.

93.     Defendant's willful policies and practices denied and continue to deny members of the FLSA Collective their rights under the PUMP Act. Defendant's actions were willful because the PUMP Act received substantial publicity at the time of its passage and thereafter. The legal obligation to provide nursing employees with reasonable breaks and secure spaces has been in effect since 2010. Ulta Beauty is a multi-billion-dollar company with a general counsel and a legal team whose job requires staying up to date with recent laws and regulations and their potential impact on Defendant's operations. Therefore, Ulta Beauty knew or should have known about its

obligation to provide lactation accommodations to its employees. Defendant had notice of its non-compliance and, by failing to act, willfully refused to provide sufficient accommodation.

94.     Ulta Beauty claims that it "strive[s] to create a workplace where everyone feels they belong . . . . by fostering an environment of inclusivity and belonging . . . ."[70] Ulta Beauty boasts about being awarded and recognized by Newsweek and Forbes as being one of the best employers for women.[71] However, refusing to provide lactation accommodations to nursing employees who request it and forcing them to continue working while they pump falls far short of creating an inclusive environment for nursing mothers, and instead results in the unlawful denial of employees' rights under the PUMP Act.

## FIRST COUNT

### Violation of the FLSA and PUMP Act
### [29 U.S.C. § 218d(a)(1)]
### (Brought on Behalf of Plaintiff and the FLSA Collective)

95.     Paragraphs 1-94 herein are realleged and incorporated by reference into this First Count.

96.     Plaintiff and the FLSA Collective are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

97.     The FLSA, at 29 U.S.C. § 218d(a)(1), states that an "employer shall provide: (1) a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk . . . ."

---

[70] *See* Ulta Beauty ESG Report, *supra* n. 13, at 9.

[71] *Id*.

98.     In violation of the PUMP Act, Defendant, throughout the relevant period, failed to provide reasonable break times for employees "to express breast milk for 1 year after the child's birth each time such employee needed to express milk. . . ." 29 U.S.C. § 218d(a)(2).

99.     Defendant, through supervisors and management employees, failed to provide reasonable break times for Plaintiff, and similarly situated employees, each time she needed to express milk in violation of the FLSA.

100.    On information and belief, Defendant, through supervisors and management employees, knowingly, willfully, and systematically engaged in this unlawful practice of refusing to provide reasonable breaks to express breast milk to Plaintiff and those similarly situated in violation of the PUMP Act.

101.    Defendant violated Plaintiff's and the FLSA Collective's rights under the PUMP Act by failing to provide reasonable break times to express breast milk.

102.    Defendant violated Plaintiff's and the FLSA Collective's rights by failing to institute policies and practices that comply with the PUMP Act.

103.    Defendant is liable to Plaintiff and the FLSA Collective for legal and equitable relief in the form of damages and other relief, including punitive damages, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses. *See* 29 U.S.C. § 216(b).

104.    Plaintiff will request that the Court authorize notice to all individuals who are current or former employees of Defendant at any time between January 1, 2022, and the time when judgment is entered and who took leave from work under the Family and Medical Leave Act ("FMLA") during that time period, to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking damages, attorneys' fees, litigation costs, declaratory and injunctive relief, and all other relief available.

## SECOND COUNT

### Violation of the FLSA and PUMP Act
### [29 U.S.C. § 218d(a)(2)]
### (Brought on Behalf of Plaintiff and the FLSA Collective)

105.     Paragraphs 1 through 104 herein are re-alleged and incorporated by reference into this Second Count.

106.     Plaintiff and the FLSA Collective are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

107.     The FLSA, at 29 U.S.C. § 218d(a)(2), states that an "employer shall provide: . . . (2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk."

108.     In violation of the PUMP Act, Defendant, throughout the relevant period, failed to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 218d(a)(2).

109.     Despite requests from nursing employees, Defendant, through supervisors and management employees, failed to provide a "functional," non-bathroom space within which Plaintiff and similarly situated employees could express breast milk without the worry of being intruded upon, in violation of the FLSA.

110.     On information and belief, Defendant, through supervisors and management employees, knowingly, willfully, and systematically engaged in this unlawful practice of refusing to provide sufficient lactation support to Plaintiff and those similarly situated, in violation of the PUMP Act.

111.    Defendant violated Plaintiff's and the FLSA Collective's rights under the PUMP Act by failing to provide an appropriate clean and safe place that is free from intrusion within which to pump breast milk.

112.    Defendant violated Plaintiff's and the FLSA Collective's rights by failing to institute policies and practices that comply with the PUMP Act.

113.    Defendant is liable to Plaintiff and the FLSA Collective for legal and equitable relief in the form of damages and other relief, including punitive damages, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses. *See* 29 U.S.C. § 216(b).

114.    Plaintiff will request that the Court authorize notice to all current and former employees of Defendant since January 1, 2022 and the time when judgment is entered who took leave from work under the FMLA to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking damages, attorneys' fees, litigation costs, declaratory and injunctive relief, and all other relief available.

**WHEREFORE**, Plaintiff prays for the following relief on behalf of herself and the FLSA Collective:

A.    An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B.    An Order from this Court ordering Defendant to post a copy of an agreed-upon and court-approved notice in a common space visible to employees at each of Defendant's locations across the country;

C.    An Order from this Court ordering Defendant to provide the undersigned with the names, addresses, email addresses, and telephone numbers of all female employees who, from January 1, 2022, to the time that judgment is entered, have taken leave from work under the FMLA;

D.    An Order from this Court ordering Defendant to send, via email, a copy of the agreed-upon and court-approved notice to all female employees who, from January 1, 2022 to the time that judgment is entered, have taken leave from work under the FMLA;

E.      Adjudicating and declaring that Defendant's conduct as set forth herein and above is in violation of the FLSA;

F.      Adjudicating and declaring that Defendant violated the FLSA by failing to provide reasonable break time and private, sanitary, non-bathroom lactation spaces for nursing mothers;

G.      Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violations of the FLSA;

H.      Awarding Plaintiff and the FLSA Collective legal and equitable damages in an amount consistent with the FLSA;

I.      Awarding Plaintiff and the FLSA Collective punitive damages;

J.      Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Defendant, in accordance with the FLSA;

K.      Awarding pre-and post-judgment interest and court costs as further allowed by law;

L.      Granting Plaintiff and the FLSA Collective leave to add additional plaintiffs by motion, the filing of written opt in consent forms, or any other method approved by the Court; and

M.      Awarding any further legal or equitable relief the Court deems just, equitable, and/or appropriate.

**SIRI & GLIMSTAD LLP**

*/s/ Mason Barney*
Mason Barney
Oren Faircloth (*pro hac vice* to be filed)
Lisa R. Considine (*pro hac vice* to be filed)
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (212) 532-1091
Fax: (646) 417-5967
E: mbarney@sirillp.com
E: ofaircloth@sirillp.com
E: lconsidine@sirillp.com

*Attorneys for Plaintiff and the FLSA Collective*